UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| CARLA AURITI, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:12-CV-334 |
| | § | |
| WELLS FARGO BANK, N.A., *et al*, | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM AND ORDER</u>

Plaintiff Carla Auriti brings this home foreclosure suit against her mortgage servicers, Defendants Wells Fargo Bank, N.A. and America's Servicing Company, a Division of Wells Fargo (collectively, "Wells Fargo"), and the purported holder of her mortgage note and deed of trust, Deutsche Bank National Trust Company. Auriti, alleging that Defendants made fraudulent misrepresentations to her during the foreclosure process and that they have no right to foreclose, asserts claims for fraud, fraud in the inception, intentional infliction of emotional distress, and for violations of the Fair Debt Collection Practices Act and Texas Debt Collection Act (the "FDCPA" and "TDCA," respectively). She also sues to quiet title and requests a declaratory judgment that an earlier foreclosure was invalid.

Defendants now move to dismiss her suit with prejudice. *See* Docket Entry No. 13. The Court has considered the briefing, the alleged facts, and

1

the relevant law, and now **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss.

## I.   BACKGROUND[1]

Auriti purchased the home in question, located in San Leon, Texas (the "Property"), in July 2006 with the help of an $84,000 loan from First Franklin.  Wells Fargo became the servicer on the loan, and the deed of trust designated the MERS system as its beneficiary.  According to Auriti, she made all her mortgage payments until 2008, when the Property was damaged by Hurricane Ike and Auriti defaulted on her mortgage payments after becoming ill with cancer.

Auriti alleges that Defendants committed a number of misdeeds and misrepresentations during the foreclosure process.  Her allegations fall into three general categories.  First, Auriti alleges that Defendants misrepresented to her that she would receive a loan modification.  Auriti alleges that Defendants informed her throughout 2009 that they were working on modifying her loan and ultimately told her in November 2009 that she would receive a trial modification.  After making payments on the trial modification from November 2009 until May 2010, Defendants informed

---

[1] This Court recites this background taking all well-pleaded facts in Auriti's amended complaint as true and viewing them in the light most favorable to Auriti, as it must do at the Rule 12 stage.

Auriti that they were denying her a modification for failure to provide "some kind of paperwork that she was not asked to provide."  Docket Entry No. 12 at 5 ¶ 7.  Auriti alleges that she was damaged by Defendants' representation that she would receive a modification because by the time Defendants denied her the modification, she "could not obtain financing from anywhere else because she appeared to be so far behind in her mortgage."  *Id.* at 6.

Second, Auriti alleges Defendants improperly and repeatedly refused to execute an insurance check she received for hurricane damage to the Property and made misrepresentations concerning that check.  Auriti claims that she received insurance checks for Hurricane Ike damage in December 2008 but that Defendants failed to execute one check, despite continued promises to do so.  Auriti alleges that Defendants continued to make misrepresentations concerning the check and failed to execute it until at least April 2012.  She claims that Defendants' refusal to execute the check prevented her from repairing the Property and caused her significant stress that exacerbated the health issues from which she was suffering in the wake of her cancer treatments.

Third, Auriti makes allegations concerning Defendants' January 2012 foreclosure on the Property, which she contends was invalid because it was conducted in violation of the bankruptcy automatic stay.  Auriti filed for

bankruptcy prior to the scheduled foreclosure sale in January 2012, and she notified Defendants of the bankruptcy filing both before and after the sale. Auriti contends that Defendants wrongfully claimed for months that the foreclosure was proper, and then refused to rescind the foreclosure sale and put the Property back in her name.  Although Deutsche Bank ultimately filed an affidavit rescinding the sale in September 2012, Auriti alleges that Defendants' eight-month delay and misrepresentations concerning the propriety of the foreclosure denied her access to insurance funds, causing her significant stress and health complications.

Additionally, Auriti argues that no Defendant has the right to foreclose on her property because the transfers or assignments of her loan, from which Defendants obtained the right to foreclose under the deed of trust, were made in violation of the pooling and servicing agreement entered into by Defendants as part of the mortgage loan securitization process.  She seeks to quiet title in the Property based on this theory.  She also requests a declaratory judgment to this end, and a declaratory judgment that the January 2012 foreclosure that took place in violation of the bankruptcy automatic stay has actually been rescinded.

Auriti filed suit in state court in November 2012.  Defendants timely removed to this Court that same month and promptly moved to dismiss.  The

Court allowed Auriti to file one amended complaint, which she did in January 2013.  Defendants then filed a second motion to dismiss, and Auriti responded by leave of this Court after she missed her original response deadline.  The motion to dismiss is now ripe for review.

## II.    RULE 12(B)(6) STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows dismissal if a plaintiff fails to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  In evaluating a Rule 12(b)(6) motion, the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).  The court does not look beyond the face of the pleadings to determine whether the plaintiff has stated a claim.  *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  To survive a motion to dismiss, a claim for relief must be "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### III.  DISCUSSION

#### A. *Fraud*

##### i.  Allegations and Rule 9(b) Standard

The Court first addresses Auriti's fraud claims, which form the bulk of her amended complaint.   Auriti asserts a number of alleged misrepresentations as grounds for these claims: that Defendants (1) falsely claimed that they were entitled to foreclose under the deed of trust even though they knew that the chain of title for Auriti's loan gave them no right to do so, *see* Docket Entry No. 12 at 7 ¶ 15, 9 ¶ 22; (2) falsely claimed they had properly foreclosed in January 2012 even though they knew Auriti's bankruptcy filing made the foreclosure improper and void, *see id.* at 7–8 ¶¶ 16, 18; (3) falsely claimed that they would execute the insurance check for Hurricane Ike damage if she took "various actions," *id.* at 5 ¶ 7, 9 ¶ 20; and (4) intentionally misled Auriti into believing she would receive a loan modification in 2009 and 2010; *see id.* at 7 ¶ 17, 8 ¶ 19.

To state a fraud claim under Texas law, Auriti must plead that "(1) a material representation was made; (2) it was false when made; (3) the speaker either knew it was false, or made it without knowledge of the truth; (4) the speaker made it with the intent that it should be acted upon; (5) the party acted in reliance; and (6) the party was injured as a result." *Coffel v.*

6

*Stryker Corp.*, 284 F.3d 625, 631 (5th Cir. 2002).   Moreover, to satisfy

Federal Rule of Civil Procedure 9(b)'s requirement that she plead her fraud

claims with particularity, Auriti must "specify the statements contended to

be fraudulent, identify the speaker, state when and where the statements

were made, and explain why the statements were fraudulent." *Flaherty &*

*Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207

(5th Cir. 2009) (citations and internal quotation marks omitted).   "However,

the Fifth Circuit has also stated that the 'time, place, contents, and identity

standard is not a straitjacket for Rule 9(b).'" *Simms v. Jones*, 879 F. Supp.

2d 595, 599 (N.D. Tex. 2012) (quoting *United States ex rel. Grubbs v.*

*Kannegatti*, 565 F.3d 180, 185 (5th Cir. 2009)).   "Rule 9(b)'s ultimate

meaning is context-specific, and thus there is no single construction of Rule

9(b) that applies in all contexts." *Grubbs*, 565 F.3d at 188 (quoting *Williams*

*v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997)).

### ii.  Claims Insufficiently Pleaded

Some of Auriti's fraud claims fail under the Rule 9(b) standard.   Her

first two theories are based on Defendants' allegedly false statements that

they had the proper chain of title to foreclose and that the January 2012

foreclosure, in particular, was valid.   But Auriti has not pleaded any facts to

show how she relied upon these supposed statements.   Even if the statements

7

were false and she was harmed by Defendants' assertion that they had properly foreclosed on the Property, the harm came from the assertion itself, not from any reliance on her part. Indeed, far from relying on the statements, she vigorously contested the validity of the January 2012 foreclosure. Thus, because she has not pleaded all elements of fraud and a reliance allegation makes no sense under the facts alleged, Auriti has not stated a claim under her first two theories.

As for Auriti's third allegation, concerning the insurance check, she claims that, after she received the check in December 2008, Defendants sent an inspector to the Property, which passed the inspection, but that "one insurance check was not executed." Docket Entry No. 12 at 5 ¶ 7. According to her, Defendants made "repeated promises to execute the check" and "Defendants alternatively promised to sign [the] check if Plaintiff took various actions but no matter what Plaintiff did Defendant changed what was necessary and refused for months and months making these representations regularly from 2011 all the way through April 2012." *Id.*

This claim fails for lack of specificity. Auriti does not identify who made these promises, for which defendant the unidentified promisor worked, when the promises were made, or even the means through which the

8

promises were made (by mail, email, or telephone).  Further, the alleged promise involved a contingency—"if Plaintiff took various actions"—but Auriti does not identify what those actions were and whether she complied. To the extent that she did comply and thus relied on the alleged misrepresentation, it is not clear what harm resulted from those actions she took.  Because Auriti has not provided sufficient detail in her second attempt to meet the Rule 9 standard, this claim will be dismissed.

### iii. Fraud Claim That Survives

Auriti's final fraud claim, that Defendants misled her into believing that she would receive a loan modification, survives the motion to dismiss. Auriti alleges that, "In November 2009, Defendant represented to Plaintiff in writing by way of letter that Plaintiff was granted a trial loan modification and she began making payments to Defendants pursuant to that modification.  After many months of Plaintiff making her payments in May 2010 she was told in writing by Defendant that she was being denied a modification . . . ."  Docket Entry No. 12 at 4–5 ¶ 17.  This allegation more precisely identifies the time and method of the alleged misrepresentation. Moreover, Auriti properly alleges reliance and injury: "Plaintiff relied on Defendants['] repeated promises regarding modification in 2009 and once she was granted a trial modification in November 2009 and began making

9

payments, she was too far in arrears when Defendants decided to retroactively charge her for payments missed while she was in the 'trial modification.'   At this point, Plaintiff could not obtain financing from anywhere else because she appeared to be so far behind in her mortgage." Docket Entry No. 12 at 6.  She also alleges that the "run around" Defendants put her through during this process made her "extremely ill and sick with stress over her home and the state of her loan."[2]  Docket Entry No. 12 at 12 ¶ 27.

Auriti is admittedly less specific in identifying that the Defendants knew the modification statements were false when made, alleging only that "Plaintiff would show that Defendant knew at the time it made representations regarding modification in . . . November 2009 that its intentions were to illegally take Plaintiff's homestead and equity from her." Docket Entry No. 12 at 7 ¶ 17.  But given Auriti's identification of the "who, what, when, where and how" of the alleged misrepresentations, her failure to

---

[2] While uncertainty long existing concerning whether Texas law allows mental anguish damages for fraud claims, *see* Rachel Giesber & Richard T. Stilwell, *Standards Governing Recovery of Mental Anguish Damages under Texas Law,* 39 S. TEX. L.REV. 45, 76–77 (1997) (noting that "[t]he Texas Supreme Court has not addressed the recoverability of mental anguish damages in fraud claims directly" and noting cases suggesting that the court would hold that "contrary to the appellate court opinions . . . , fraud claims do not automatically entitle a plaintiff to recover mental anguish damages"), the Texas Supreme Court more recently noted, without much discussion, that a plaintiff bringing a fraud claim could recover "economic damages, mental anguish, and exemplary damages, but not attorney's fees."  *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 304 (Tex. 2006).

10

identify more specific scienter evidence at this stage does not warrant dismissal given the context of communications between lender and loanholder. *Cf. Cuevas v. BAC Home Loans Servicing, LP*, No. 4:10-cv-31, 2012 WL 4339063, at *6 (S.D. Tex. Sept. 19, 2012) (holding that a foreclosure plaintiff's fraud allegations satisfied the Rule 9(b) standard even without specific factual allegations to show that the defendant's statements were false).

### iv.  Economic Loss Rule

Because Auriti has sufficiently pleaded one of her fraud claims, the Court next turns to Defendants' argument that the economic loss rule bars any fraud claims.  That rule bars some tort claims by plaintiffs who have only suffered losses relating to the subject of a contract. *See Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991).  "In determining whether a tort claim is merely a repackaged breach of contract claim, a court must consider: 1) whether the claim is for breach of duty created by contract, as opposed to a duty imposed by law; and 2) whether the injury is only the economic loss to the subject of the contract itself." *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 763 (N.D. Tex. 2012) (citations and internal quotation marks omitted); *see also Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986) ("The acts of a party may breach

duties in tort or contract alone or simultaneously in both.  The nature of the injury most often determines which duty or duties are breached.  When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone.").  The Texas Supreme Court recently reiterated this principle in *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407 (Tex. 2011), noting that the economic loss rule applies when the damages sued for arose from the "breach of a duty created under contract, as opposed to a duty imposed by law."  *Id.* at 417 (citing *DeLanney*, 809 S.W.2d at 494); *see also SCS Builders, Inc. v. Searcy*, 390 S.W.3d 534, 540 (Tex. App.—Eastland 2012, no pet.) (stating that "when the source of the duty lies outside the contract, economic damages are recoverable").

In this case, Defendants argue that "[t]he duties that Plaintiff alleges Defendants breached can only relate to Defendants' obligations that 'flow' from the contractual relationship of the parties from the Note and Deed of Trust."  Docket Entry No. 13 at 14.  According to Defendants, the injury Auriti complains of "relates to the subject matter of her Mortgage" and thus the economic loss doctrine bars her claims for fraud.  *Id.* at 14–15.

Defendants' argument does not hold up upon close examination.  First, the legal duty Auriti alleges Defendants breached is not derived from the note or deed of trust (there are no allegations that these instruments

12

imposed on Defendants a contractual obligation to provide Auriti with a modification) but rather from Defendants' legal obligation not to commit fraud when entering into a new business relationship, which a loan modification would have constituted.  "[A]s a matter of law the economic loss rule does not apply to fraud claims because the parties to a contract have an independent duty not to commit the intentional tort of fraud." *Barcenas v. Fed. Home Loan Mortg. Corp.*, No. H-12-2466, 2013 WL 286250, at *7 (S.D. Tex. Jan. 24, 2013) (citations omitted); *see also Casey v. Fed. Home Loan Mortg. Ass'n*, No. H-11-3830, 2012 WL 1425138, at *3 (S.D. Tex. Apr. 23, 2012) ("[T]he legal duty not to fraudulently procure a contract is separate and independent from the duties established by the contract itself; thus, tort damages are recoverable for a fraudulent inducement claim irrespective of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract." (internal punctuation omitted) (quoting *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46–47 (Tex. 1998))); *but see Rivers v. Wells Fargo Home Mortg.*, No. H-12-2616, 2013 WL 1389977, at *3 & n.1 (S.D. Tex. Apr. 4, 2013) (applying the economic loss rule to bar a fraud claim and stating that fraudulent inducement claims are uniquely exempt from the rule).

13

Second, the damages Auriti alleges she suffered are "over and above the economic loss to the subject matter of the note and deed of trust." *Hurd*, 880 F. Supp. 2d at 764.   As the Fifth Circuit has noted, the economic loss rule "bars tort actions based solely on recovery of the loss or damage to the subject of a contract." *New Century Fin., Inc. v. Olympic Credit Fund, Inc.*, 487 F. App'x 912, 915 (5th Cir. 2012) (per curiam).  Certainly, some of the damage Auriti alleges she suffered as a result of her reliance on the modification promise affected the subject of the note and deed of trust, that is, the debt she owed Defendants on the note and her ownership of the Property.  *See Casey*, 2012 WL 1425138, at *4 (holding that a promise not to foreclose related only to the subject of the note and deed of trust).  But, unlike in *Casey*, Auriti does not allege merely that Defendants promised her a modification and that they would not foreclose; rather, she alleges damages for mental anguish and that she lost the opportunity to obtain other financing because of her reliance on Defendants' alleged promise that she would receive a modification.  *See Hurd*, 880 F. Supp. 2d at 764 (holding in a foreclosure case that the economic loss rule only applied to "damages constituting the benefit of her contract with the defendant" and not "damages suffered in reliance upon a negligent misrepresentation" such as "out-of-pocket expenses incurred in reliance on the alleged representations" (citing

14

*Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442–43 (Tex. 1991); Restatement (Second) of Torts § 552B).

Thus, because Auriti's surviving fraud claim involves a duty imposed by law and does not deal with damages that are solely the subject of the note and deed of trust, that claim is not barred by the economic loss rule.

### B. Fraud in the Inception

Auriti also brings a separate claim for fraud in the inception of her mortgage loan, arguing that "such fraud caused Plaintiff to be faced with mortgage payments which were higher than she could afford and at a higher rate and that the lender knew of this fact and took advantage of Plaintiff in order to profit." *Id.* at 9 ¶ 21. However, she does not allege that Defendants made any specific misrepresentation regarding the July 2006 execution of Auriti's mortgage loan. In any case, Defendants correctly point out that this claim is barred by Texas's four-year statute of limitations for fraud claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(4). Although Auriti argues that the claim was not discoverable until after November 5, 2008—exactly four years before Auriti filed this suit in state court—she provides no basis for her assertion. Thus, Auriti's fraud in the inception claim is time-barred and must be dismissed. *See, e.g.*, *Renfrow v. CTX Mortg. Co., LLC*, No. 3:11-cv-3132-L, 2012 WL 3582752, at *7 (N.D. Tex. Aug. 20, 2012);

*Smallwood v. Bank of Am.*, No. 3:11-cv-1283-D, 2012 WL 32654, at *2 (N.D. Tex. Jan. 6, 2012) (both dismissing fraud claims as time-barred in foreclosure cases).

### C. FDCPA and TDCA

Auriti alleges that Defendants' actions and misrepresentations violated both the federal and state debt collection statutes. In response, Defendants argue that Wells Fargo is not a debt collector under either statute.

Defendants are correct with respect to the federal statute. The FDCPA explicitly exempts from the definition of the term "debt collector" "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was originated by such person [or] concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F); *see also Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (stating that mortgage assignees and loan servicers like Defendants are not debt collectors under the FDCPA); *Montgomery v. Wells Fargo Bank, N.A.*, 459 F. App'x 424, 428 n.1 (5th Cir. 2012). Thus, because Defendants are not debt collectors under the federal statute, Auriti's FDCPA claims fail as a matter of law.

However, Auriti's claims under the Texas statute survive this stage of the case.  The TDCA's text divides the universe of debt collectors into two separate categories: "debt collectors" and "third-party debt collectors."[3]  The definition of "third-party debt collector" tracks the FDCPA's definition of "debt collector."  *See* Tex. Fin. Code Ann. § 392.001(7) (incorporating the FDCPA's definition of debt collector in 15 U.S.C. § 1692a(6)).  But the TDCA's general definition of "debt collector" is more expansive: it includes all persons "who directly or indirectly engage[] in debt collection," and may include mortgage holders and servicers.  Tex. Fin. Code Ann. § 392.001(6).  Thus, "the TDCA's definition of 'debt collectors' is also intended to encompass creditors collecting their own debts."  *Gatling v. CitiMortgage, Inc.*, No. H-11-2879, 2012 WL 3756581, at *9 (S.D. Tex. Aug. 28, 2012) (internal quotation marks and citations omitted).  Because Defendants are attempting to collect on the mortgage note and foreclose on the Property, they are debt collectors under the TDCA.[4]

---

[3] With one exception, the TDCA's substantive provisions prohibiting fraudulent behavior, unfair means, and abuse apply equally to both debt collectors and third-party debt collectors.  The one exception is Tex. Fin. Code Ann. § 392.304(a)(5), which prohibits third-party debt collectors only from failing to disclose, in certain circumstances, that their communications are attempts to collect a debt and are from a debt collector.  *Id.*

[4] Although Defendants do not raise the issue, there is some uncertainty whether foreclosure activity constitutes debt collection under the TDCA.  *See Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp. 2d 725, 731 (N.D. Tex. 2011) (noting that the Texas Supreme Court has not resolved the issue).  The Court follows the well-reasoned

Defendants, citing *Woodcock v. Chase Home Fin., LLC*, No. H-11-1199, 2012 WL 393260 (S.D. Tex. Feb. 3, 2012), also argue that Auriti's debt collection act claims based on alleged fraudulent misrepresentations must be dismissed because Auriti has not satisfied Rule 9(b)'s heightened pleading standard with respect to these claims.   Although *Woodcock* did hold that Rule 9(b) applied to pleading TDCA claims, the Court is convinced that the better rule is that of *Prophet v. Myers*, 645 F. Supp. 2d 614 (S.D. Tex. 2008), which held that the general Rule 8 "notice" pleading standard applies to all FDCPA and TDCA claims, even those based on allegations of false or misleading representations.   *Id.* at 617; *accord Ranzy v. Extra Cash of Tex., Inc.*, No. H-09-3334, 2011 WL 6719881, at *5 (S.D. Tex. Dec. 21, 2011).   As the *Prophet* court held, "establishing a violation of [the FDCPA's ban on false representations] is a substantially different matter than establishing common law fraud," and "courts considering the issue have invariably determined the sufficiency of FDCPA pleadings by applying Rule 8 rather than Rule 9(b)."   *Prophet*, 645 F. Supp. 2d at 617 (citing *Neild v. Wolpoff & Abramson, LLP*, 453 F. Supp. 2d 918, 923 (E.D. Va. 2006), and collecting cases) (internal punctuation and citations omitted).

---

*Biggers* opinion in assuming that foreclosure activity can constitute debt collection under the TDCA.  *See id.* at 730–32 (making an "*Erie* guess" that the TDCA does apply to actions taken in foreclosing on real property because the text of the TDCA and case law from the Texas intermediate courts of appeals support this conclusion).

Applying Rule 8's more lenient pleading standard, Auriti's allegations that Defendants made a number of misrepresentations in an attempt to collect on the mortgage debt, *see supra* pp. 2–4, are sufficient to state a claim under the TDCA.  Of course, in order to prevail on summary judgment and, ultimately, at trial, Auriti will have to present evidence that Defendants actually made misrepresentations in an attempt to collect the debt she owed them.  For now, however, her TDCA claims against Defendants may go forward.

### D. Intentional Infliction of Emotional Distress

Auriti also brings an intentional infliction of emotional distress claim for Defendants' actions during the foreclosure process.  Generally, Auriti alleges that Defendants intended to cause her emotional distress by repeatedly giving her false promises that they would sign the insurance check, giving her the runaround over whether she would receive a loan modification, losing the papers she sent Defendants, and generally causing her extreme stress and further damaging her health by proceeding with the foreclosure process at a time when she was very ill with cancer.  *See* Docket Entry No. 12 at 12–13 ¶ 27.

To succeed on an intentional infliction claim, Auriti must show "(1) the defendant acted intentionally or recklessly; (2) the conduct was

19

extreme and outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 611 (Tex. 1999).  Courts serve a gatekeeping role in adjudicating these claims by deciding initially "whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery."  *Tex. Farm Bureau Mut. Ins. Cos. v. Sears*, 84 S.W.3d 604, 610 (Tex. 2002) (internal quotation marks and citations omitted).  This standard can only be met if a defendant's conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  *Id.* (internal quotation marks and citations omitted).  "Conduct that is merely insensitive or rude is not extreme or outrageous."  *Id.* (citation omitted).

The actions of a financial institution attempting to enforce its contractual right to foreclose on a deed of trust under which the homeowner has defaulted, without more, do not meet the high bar of "outrageous" behavior.  *See Wieler v. United Sav. Ass'n of Tex.*, 887 S.W.2d 155, 159 (Tex. App.—Texarkana 1994, writ denied) (holding that "a foreclosure sale that complies with the terms of the loan agreements and the applicable law would not justify a claim for intentional infliction of emotional distress");

*see also Robinson v. BAC Home Loan Servicing, LP*, No. H-10-5168, 2011 WL 2490601, at *5–6 (S.D. Tex. June 21, 2011) (dismissing an intentional infliction claim because the plaintiff alleged no more than the receipt of a letter notifying her of an impending foreclosure, and the subsequent foreclosure itself).   Moreover, even improper conduct that might in other situations constitute bad faith or invalidate a foreclosure—such as allegations that the bank violated part of the loan agreement, refused to negotiate, promised and then denied the plaintiff a loan modification, or that its bureaucracy generally made the plaintiff's life miserable—will not support an intentional infliction claim.   *See Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699–700 (Tex. 1994) (holding that allegations that the defendant delayed sending benefits payments, gave the plaintiff the runaround when she tried to inquire about the payments, fabricated excuses, and treated the plaintiff rudely were insufficient to support an intentional infliction claim); *Wieler*, 887 S.W.2d at 159 (noting that the defendant's wrongful deduction of attorney's fees from an escrow account could not give rise to an intentional infliction claim even though it may have breached the loan agreements and precipitated a wrongful foreclosure); *Lopez v. Countrywide Mortg.*, No. 2:06-cv-116, 2008 WL 4682040, at *7 (S.D. Tex. Oct. 20, 2008) (finding that the alleged improper transferring of property and

21

false filing of title documents by a debt collector involved in the foreclosure process was not outrageous as a matter of law).  Thus, in the absence of some more unusual and severe allegations, *see, e.g.*, *Bonilla v. Am.'s Servicing Co.*, No. H-11-1974, 2011 WL 3882280, at *1, *3 (S.D. Tex. Sept. 2, 2011) (finding that plaintiff stated a claim for IIED by alleging that an individual debt collector defendant went to her house in person to order plaintiff and her school-aged children to vacate the premises even though plaintiff had won a temporary restraining order stopping the foreclosure), a foreclosure plaintiff's intentional infliction claim should be dismissed.

Auriti's tale of trying to cope with financial stress and stave off foreclosure while suffering from poor health is one that is unfortunately common among the many home foreclosure cases filed in recent years. Auriti alleges no extraordinary or unusual facts, and she makes no allegation that Defendants acted on the improper January 2012 foreclosure or—as the plaintiff alleged in *Bonilla*—that Defendants ever tried to evict her from the Property while the dispute was ongoing.  Despite all the distress that Auriti alleges, it remains the case that she was able to remain in the home during this time period despite not making her loan payments.  As the foregoing cases make clear, the conduct Auriti alleges falls squarely in the realm of

actions that are not "outrageous" as a matter of law. Her intentional infliction of emotional distress claim must be dismissed.

### E. Quiet Title

Auriti also asks this Court to quiet her title in the Property because "she took the property by Warranty Deed subject only to Deeds of Trust to First Franklin Mortgage" and thus "Defendants['] purported transfers of the mortgage" were not valid. Docket Entry No. 12 at 10–11 ¶ 24. Defendants argue that she has no standing to assert this claim because Auriti bases her argument that the mortgage transfers were not valid on alleged violations of the pooling and servicing agreement Defendants entered into as part of the securitization process. The Court agrees. Although it is not settled whether or not a home foreclosure plaintiff in Texas can ever have standing to challenge a defendant's right to foreclose under the chain of title leading back to the original note and deed of trust, *compare Schieroni v. Deutsche Bank Nat'l Trust Co.*, No. H-10-663, 2011 WL 3652194, at *6 (S.D. Tex. Aug. 18, 2011) (disallowing a challenge to an allegedly fraudulent assignment of a mortgage for lack of standing), *with Preston v. Seterus, Inc.*, -- F. Supp. 2d --, No. 3:12-cv-2395-L, 2013 WL 1091272, at *6–10 (N.D. Tex. Mar. 15, 2013) (holding that plaintiffs have standing to challenge a defendant's right to foreclose in certain situations), even those courts taking

a more generous approach have held that plaintiffs cannot challenge a defendant's right to foreclose when the sole basis for the challenge is an alleged violation of a pooling and servicing agreement. *See Preston*, 2013 WL 1091272, at *10. Thus, Auriti has no standing to bring her quiet title claim, which must be dismissed.

### F. Declaratory Judgment

Finally, Auriti brings a claim for a declaratory judgment "establishing her superior rights to the property and that any foreclosure has been rescinded." Docket Entry No. 12 at 12 ¶ 26. To the extent that she requests a declaratory judgment that no Defendant may foreclose on the Property, that claim is merely redundant of her quiet title claim and must be dismissed for lack of standing. *See Enis v. Bank of Am., N.A.*, No. 3:12-cv-0295-D, 2012 WL 4741073, at *7 (N.D. Tex. Oct. 3, 2012) (dismissing a declaratory judgment claim based on the same facts as the plaintiff's breach of contract claim as redundant).

However, Auriti may proceed with her request for a declaratory judgment that the January 2012 foreclosure occurring in violation of the bankruptcy automatic stay has been rescinded and was of no effect. Defendants do not argue against the merits of this claim, but instead contend that it should be dismissed as moot since, in September 2012, Deutsche

Bank recorded an affidavit in the Galveston County land records declining title to the Property and thereby rescinding the January 2012 foreclosure.[5] *See* Docket Entry No. 13-4. However, as Auriti points out in her response to the motion to dismiss, Deutsche Bank's affidavit was improperly indexed in the land records, a fact which potentially leaves Auriti open to conflicting claims of ownership regarding the Property.[6] A declaratory judgment that Auriti remains the owner of the Property subject to and until Defendants exercise their right to properly foreclose on the deed of trust would insulate Auriti from such claims. Because this mistake in the land records appears sufficient to keep alive the controversy over whether the January 2012 foreclosure was properly rescinded, Defendants' motion to dismiss this final claim will be denied.

---

[5] Because the affidavit and the other recorded land records concerning the Property are public documents, *see Search Real Estate Index*, *Galveston County, Tex.* http://ccweb.co.galveston.tx.us/RealEstate/SearchEntry.aspx (last visited Apr. 18, 2013), the Court takes judicial notice of and considers them in ruling on Defendants' motion to dismiss. *See Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." (citation omitted)).

[6] Except for the affidavit, all of the recorded land records for the Property, including the deed establishing Auriti's ownership, the deed of trust establishing the lien in this case, and the deed establishing Deutsche Bank's now-rescinded ownership under the January 2012 foreclosure sale, may be found in the real estate index of the Galveston County land records in a search for Block 134, Lot 6-8, San Leon Subdivision. *See Search Real Estate Index*, *supra* n.4. Deutsche Bank's affidavit declining title appears only in an index search for Block 134, Lot 6-7-8, San Leon Subdivision. *See id.*

IV.   CONCLUSION

For the reasons discussed above, most of Auriti's claims must be dismissed.  Defendants' Motion to Dismiss Amended Complaint (Docket Entry No. 13) is **DENIED IN PART** with respect to Auriti's fraud claim that Defendants promised her a loan modification, and with respect to her TDCA claims and her claim for a declaratory judgment that the January 2012 foreclosure has been rescinded, but is **GRANTED IN PART** with respect to all of Auriti's other claims, which are **DISMISSED WITH PREJUDICE**.[7]

**IT IS SO ORDERED**.

**SIGNED** this 3rd day of June, 2013.

_____
Gregg Costa
United States District Judge

---

[7] Auriti alternatively requests a chance to file a second amended complaint to replead her claims.  The Court denies this request because it stated definitively at the December 19, 2012 status conference that it would give Auriti one, and only one, chance to replead her complaint.  Moreover, the Court already allowed Auriti to file her response to the motion to dismiss nearly a month after her response deadline had passed.